Probate Court, Grafton County
No. 78-045

IN THE MATTER OF ARTHUR W. RICE

July 18, 1978

*Stebbins & Bradley*, of Hanover (*Daniel J. Connolly* orally), for heirs at law.

*William E. Lovejoy*, of Lebanon, waives brief and oral argument for legatees.

DOUGLAS, J. The issues in this case are whether a handwritten will that is ineffective as a will itself revokes an earlier will, and whether a divorce and property settlement, by implication of law, revokes all preexisting testamentary provisions for the divorced spouse and her natural family. These questions were answered in the negative by the Probate Judge (*Jones*, J.) who transferred the exceptions of the heirs at law.

In 1964 the decedent executed a will bequeathing his entire estate to his wife, if she survived him, otherwise to his five step-children. The decedent named his five natural children but made no provision for them. In 1971 the decedent and his wife were divorced. A property settlement was decreed dividing the real and personal property

of the parties. Mrs. Rice waived alimony and support; the decree made no mention of any interest each might have had in the estate of the other. A year later Mrs. Rice died.

In 1970 after the couple separated, but before the divorce was decreed, the decedent went to a local store and had only two witnesses subscribe to a handwritten will. One witness testified that both he and Mr. Rice felt that only two witnesses were necessary. In this holographic instrument the decedent bequeathed all of his property, except for guns, to his natural daughter, Beverly Townes. Mrs. Townes filed a petition to prove the will in common form, but the petition was denied for lack of a third witness. RSA 551:2. Nevertheless, all five natural children, protestors here, claimed that the 1964 will had been revoked by the 1970 instrument or impliedly by the divorce. The probate judge found no express, RSA 551:13, or implied, RSA 551:14, revocation and approved the 1964 will favoring the children of the decedent's former wife.

 The protestors first assert that although the 1970 instrument was ineffective as a will, it at least serves as a revocation of his 1964 will and testamentary intent. New Hampshire has adopted the doctrine of dependent relative revocation, which means that if a will change fails for some technical reason, an otherwise valid effort to revoke fails as well, and the earlier valid will remains in effect. The doctrine " 'is based upon the presumption that the testator performed the act of revocation . . . for the purpose of making some other disposition of his property in place of that which was canceled, and that there is, therefore, no reason to suppose that he would have made the change if he had been aware that it would have been wholly futile, but that his wishes with regard to his property, as expressed in his original will, would have remained unchanged. . . .' " *Ruel v. Hardy*, 90 N.H. 240, 247, 6 A.2d 753, 759 (1939). The rule is only a rebuttable presumption and does not apply "when there is some actual evidence on the question of . . . intention. . . ." *Id.* The matter is a question of fact to be determined by competent evidence.

 In the instant case, the testator's desires had he been informed of the true situation regarding the 1970 will are unclear. He did not clearly desire all of his natural children to inherit, for he named but one, Beverly, in the handwritten will. Possibly the presumption in favor of the earlier will lacks force due to its generosity to mere step-children. On the other hand, the presumption against intestacy, absent clear evidence, counterbalances. *See Merchants*

*Nat'l Bank v. Berry*, 93 N.H. 388, 391, 42 A.2d 693, 695 (1945). We cannot say that on all the evidence the probate judge concluded erroneously.

The protestors also argue that the divorce decree and property settlement in 1971, after the execution of the second instrument, constitutes a sufficient change in circumstances to revoke the will by implication of law. RSA 551:14 provides that there can be a "revocation of a will, implied by law, from any change in the circumstances of the testator, or his family, devisees, legatees, or estate, occurring between the time of making the will and the death of the testator." The probate court rejected this claim as a matter of law, relying on *Hoitt v. Hoitt*, 63 N.H. 475, 3 A. 604 (1885). In *Hoitt*, we held that G.L. 193:15, now RSA 551:14, was essentially declarative of English law. That law automatically revoked only a prenuptial will of a woman after her marriage and a man's will after his marriage and birth of his child. M. Rheinstein & M. Glendon, The Law of Decedents' Estates 268 (1971).

A majority of jurisdictions, through either specific statutes or interpretation of statutes virtually identical to RSA 551:14, now provide that a divorce and property settlement automatically revoke a prior will by operation of law as to those testamentary provisions favoring the spouse. *Caswell v. Kent*, 158 Me. 493, 186 A.2d 581 (1962); *Younker v. Johnson*, 160 Ohio 409, 116 N.E.2d 715 (1954); 79 Am. Jur. 2d *Wills* § 588 (1975). "Under most of the cases applying a statutory rule that a divorce operates as a revocation, or a case-law rule, that a divorce coupled with a property settlement operates as a revocation, what are revoked are specific testamentary provisions favoring the spouse and not the entire will. The Uniform Probate Code for example, takes this position." Uniform Probate Code § 2-508; Annot., 71 A.L.R.3d 1297, 1301–02 (1976). In the case at hand, the former spouse of the testator predeceased him so we need not decide if such a rule should be adopted in this State. Of course, the legislature is free to clarify this matter by statute should it so desire.

*Exceptions overruled.*

BROCK, J., did not sit; the others concurred.